STATE v. JAMES DAVID THIELE.

155 N. W. (2d) 397.

January 5, 1968—No. 40,856.

C. *Paul Jones,* State Public Defender, and *Ronald J. Wolf,* for appellant.

*Douglas M. Head,* Attorney General, *Gerard W. Snell,* Acting Solicitor General, and *David J. Byron,* Special Assistant Attorney General, for respondent.

PETERSON, JUSTICE.

Defendant was convicted, upon a jury verdict, of the crime of carnal knowledge of a child[1] and appeals from an order denying his motion for judgment of acquittal or a new trial and from the judgment.

The first contention of defendant is that the trial court erred in refusing to order the state to produce statements of the complaining witness. The contention is without merit because the record indicates that the statements were in fact produced. At the opening of trial on September 7, 1966, defendant's counsel demanded the production of "all statements, physical evidence and other materials that are available to and in the hands of the prosecution at this time," on the authority of State v. Grunau, 273 Minn. 315, 141 N. W. (2d) 815. The trial court thereupon ordered the county attorney to have in the courtroom during the trial "any statements made by any witness to the police or sheriff's office or to the prosecuting attorney's office" and "all reports made by the investigating officers who are witnesses to their superiors or to fellow police officers."

The statements to which defendant's motion and the court's order were directed were those of the complaining witness. The offense occurred in the late evening hours of July 9 and early morning of July 10, 1966, when defendant, an adult, paid a visit to the home at which the girl, 16 years of age, was babysitting. The parents of the baby returned unexpectedly and surprised the couple virtually in flagrante de-

---

[1] Minn. St. 617.02.

licto and called the police. The couple were taken to the police station, and the complaining witness apparently made some kind of oral statement. She made a further statement thereafter, on July 15, and the substance of both interrogations apparently was incorporated into a single written statement. The written statement of July 15 was delivered to the defendant at the conclusion of direct testimony of the complaining witness upon defendant's renewed motion and the further order of the trial court.[2]

The defendant, nevertheless, was not satisfied and the following exchange thereupon occurred among counsel and the court:

"MR. LANGFORD [defendant's attorney]: Your Honor, if there were any oral statements made by the investigating officers by the complaining witness or statements made in the course of this investigation by the complaining witness I would also request at this time that these be furnished.

"THE COURT: Mr. County Attorney, do you have any other statements?

"MR. SAWYER [county attorney]: Not that I know of, Your Honor. I can check through this and see. *The statement that I handed defendant's counsel incorporates the information given to the police. I don't recall any other comments.* * * *

* * * * *

"MR. SAWYER: My question is whether or not the Court's ruling is that anything that these officers may have in the way of their notes, observations—

"THE COURT: You don't have to give them their observations or anything like that, all you have to disclose to them is do they have in their records a quotation made by this defendant to them in a quotation [sic].

"MR. SAWYER: I understand the only statements required by this lawsuit is the statement that the witness has claimed to be a signed

---

[2] Defendant apparently also had the transcript of preliminary hearings conducted on August 14 and 16, 1966, from which his counsel appeared to examine the complaining witness at some length.

statement or something, rather than the officer's recollection of something he may have heard.

"THE COURT: That you don't have to put down, but if to circumvent the furnishing of a statement they refrain from having a signed statement and if they interrogate him right down to what she says, and then put it down, her quotation and don't read it to her, don't ask her to sign it, then they cannot at a later date be heard to say we don't have any statement from her. *If you have any police interrogation of this * * * complaining witness, of that nature in addition to the signed one then I want you to deliver it. Do you have anything of that nature?*

"MR. SAWYER: *No, Your Honor, I don't.*

"THE COURT: If you haven't got it you haven't got it.

"MR. LANGFORD: Then I would reserve the right after this matter is concluded to have the Court inspect his record. There is no other procedural way to determine whether or not this man's rights have been violated other than that.

\* \* \* \* \*

"THE COURT [to the county attorney]: Very well, *over the noon hour show me what you have that might be considered in the way of a statement and the Court will examine it and determine that.*" (Italics supplied.)

We must infer that the trial court did inspect the file during recess and that such search revealed no other such document that would respond to defendant's motion, for there is nothing in the record to rebut the reasonable presumption that the court did what it declared its intention to do forthwith. If defendant entertained continued doubt he could have interrogated such witnesses themselves as to whether they had made or received other such statements. There is, under the circumstances, no reason even to surmise that any document was improperly withheld from defendant.

This case, then, involves only a question as to the *existence* of a document rather than as to the *producibility* of a document. We noted in State v. Grunau, 273 Minn. 315, 141 N. W. (2d) 815, that in cases of doubt as to the producibility of a statement a hearing should be held in camera to determine the question, at which time a record should be

made for use on appeal. We think that in such cases the questioned document should be marked and made a part of the record so that the document, together with the evidence relating to it, may more meaningfully be considered on appeal. The document actually delivered to defendant could have been so marked and made a part of the record for our examination on this appeal, but obviously a nonexistent document could not be presented in that manner. Although no in camera hearing was conducted, the nature of the lengthy exchange among counsel and the court at the bench, only part of which has been quoted, convinces us that no prejudicial error occurred.

■ The second contention of defendant is that the trial court erred in failing to instruct the jury to disregard certain remarks made by the prosecuting attorney in final argument. What the county attorney said was this:

"He had carnal knowledge of this girl.

"Now what does the defendant have to do? *The defendant has to try to show some how that this didn't happen.*

"MR. LANGFORD: Your Honor—

"THE COURT: That's not true, he doesn't have to prove anything; the State has all the showing to do.

"MR. SAWYER: *I am sorry, Your Honor, I misspoke. I completely withdraw that statement, that was an incorrect statement.* I will state it this way—

"MR. LANGFORD: Your Honor, I object to this statement and move the Court to instruct the jury to disregard this completely.

"THE COURT: Complete your argument." (Italics supplied.)

The trial court did not thereafter expressly instruct the jury to disregard the remark. The jury, however, had been fully informed by *both* court and counsel that the comment was incorrect.[3] It is inconceivable

---

[3] The remark was apparently inadvertent. It appears in the context of subsequent argument, not quoted here, to have been but a prelude to what was otherwise undoubtedly proper argument concerning the weakness of evidence offered on behalf of defendant. The evidence against defendant was strong. Although the proof of the very act of sexual penetration rested solely on the testimony of the complaining witness, the corroborating wit-

that a jury would not understand that such an isolated and incorrect comment of counsel was to be disregarded. We think that the immediate intervention of the court was itself more dramatic and curative than any formal instruction could have been.

Affirmed.

nesses observed that she was in the act of attempting to put on her undergarments and that defendant was stark naked in the bed. Defendant did not take the stand but called his brother for only a few questions for the apparent purpose of impeaching the accuracy or truthfulness of the complaining witness by testimony that she was wrong as to the time and place of one of several prior "dates" which she testified she had had with the defendant. That, too, was the thrust of the cross-examination of the complaining witness on the basis of her prior statements. When the county attorney said, "The defendant has to try to show some how that this didn't happen," he was in the course of launching into fair comment as to the unpersuasive character of the evidence adduced in defense.